IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

DAMIEN T. GREEN and TIMOTHY CROWLEY,

                      Plaintiffs,

v.

GREGORY GRAMS, Warden; JIM DOYLE, Governor;
KURT SCHWEBKE; JERRY MAIER; RICK RAEMISCH,
Secretary; SHANNON SHARPE, Crisis worker; RUBIN ASCH,
Head of P.S.U.; S. HOEM, P.S.U. staff; CAPTAIN RADTKE;
SGT. TAMMINGA; CAPT. MASON; DR. BARID, P.S.U. staff;
JANEL NICKEL, Security Director; JANE DOES 1-12 and JOHN
DOES 1-12,

                      Defendants.

OPINION and ORDER

10-cv-745-slc

---

In this civil action for monetary and injunctive relief brought pursuant to 42 U.S.C. § 1983, plaintiffs Damien Green and Timothy Crowley contend that they were denied adequate mental health treatment at various institutions at which they were housed. In an opinion and order entered June 17, 2011, I informed plaintiffs that their complaint was defective in two ways: First, it violated Fed. R. Civ. P. 20, which provides that multiple defendants may not be joined in a single action unless the plaintiff asserts at least one claim to relief against each of them that arises out of the same transaction or occurrence or series of transactions or occurrences and presents common questions of law or fact. *George v. Smith*, 507 F.3d 605 (7th Cir. 2007); 3A Moore's Federal Practice ¶ 20.06, at 2036- 2045 (2d ed. 1978). Second, it violated Fed. R. Civ. P. 8 by failing to state a short and plain statement of relief. The court allowed plaintiffs the opportunity to cure these defects by filing an amended complaint, explaining that plaintiffs

> will need to allege that their claims are against the same defendants and arise from the same transactions. Further, they will have to explain *how* their rights were violated and *who* violated them, naming names.

Order, June 17, 2011, dkt. 37, at 4.

Plaintiffs have now filed a proposed amended complaint. Although the proposed

amended complaint provides more specific information about how plaintiff Green's rights were violated and by whom, it does little to fill in the blanks regarding plaintiff Crowley. In addition, it still violates Rule 20 in that it raises claims that apply only to Green and which involve a different set of defendants than the claims involving Crowley. Accordingly, the first amended complaint will be dismissed in part, as explained in more detail below. Plaintiffs will be granted one final opportunity to submit an amended complaint (or complaints) that cures the defects identified below.

In addressing any pro se litigant's complaint, the court must read the allegations of the complaint generously. *Haines v. Kerner*, 404 U.S. 519, 521 (1972). In their proposed amended complaint, Green and Crowley allege the following facts, which the court assumes to be true for the sole purpose of this order.

## FACTS

### I. The Parties

Plaintiffs Damien R. Green and Timothy Crowley are currently incarcerated at the Columbia Correctional Institution (CCI), located in Portage, Wisconsin. They both have a history of mental disorders, including anxiety attacks and personality disorders. Both Green and Crowley have been in "the hole," also known as adjustment confinement, for two years.

Defendant Jim Doyle was the Governor of the State of Wisconsin. Defendant Rick Raemisch was the Secretary of the Wisconsin Department of Corrections and defendant Gregory Grams is the Warden at CCI. Defendant Kurt Schwebke is the head of the psychiatry unit at CCI. Defendants Jerry Maier and Dr. Barid are mental health professionals at CCI. Defendants Capt. Radtke, Sgt. Tamminga and Janel Nickel are employed at CCI.

Defendant Shannon Sharpe is a crisis worker at the Wisconsin Secure Prison Facility (WSPF), located at Boscobel, Wisconsin. Defendants Rubin-Asch and S. Hoem are employed as mental health professionals at WSPF. Defendant Capt. Mason is employed at WSPF.

**II. Facts Pertaining to Plaintiff Green**

Schwebke and Dr. Barid failed to get Green proper mental health treatment at CCI or send him to a different institution for such treatment. Dr. Barid referred Green to the Wisconsin Resource Center for an "evaluation" instead of for programming. On the referral form, Dr. Barid did not describe Green's symptoms but noted that Green liked to file lawsuits. Schwebke, Dr. Barid's supervisor, allowed this to happen. When WRC staff saw the notation on the referral form, they "discriminated" against Green by placing him in segregation because he refused to eat instead of providing him with a mental health evaluation.

Green requested and was transferred to the Wisconsin Secure Program Facility (WSPF) in Boscobel, Wisconsin. He did this upon the advice of defendant Schwebke. This was bad advice because Green did not obtain the mental health treatment he needed at WSPF.

At WSPF, Green had a panic attack. He told the sergeant on duty that he needed to see the crisis worker, Sharpe. Sharpe refused to see him. Green's panic attack escalated into an asthma attack, which caused Green undue pain and suffering. Defendant Rubin-Aschs, Sharpe's supervisor, allowed this to happen.

Green put in requests to see defendant S. Hoem in the psychiatry unit at WSPF. Hoem told Green she could give him "home work" but could not meet with him in person, even though she and other PSU staff met personally with other inmates.

**III. Facts Pertaining to Plaintiff Crowley**

Defendant Schwebke has failed to give Crowley "proper treatment placement and programming" by "allowing him to sit in segregation confinement for over many years" even though Crowley has a serious history of mental illnesses and behavioral disorder. Defendant Janel Nickel refuses to remove Crowley from adjustment confinement or send him to another institution even though she knows Crowley's mental health history. Defendant Nickel "discriminated" against Crowley by using his behavioral disorder to keep him in adjustment confinement.

**IV. Facts Pertaining to Both Plaintiffs**

Defendants Radtke and Tamminga refuse to talk to Nickel about moving Crowley and Greene to an institution where they can get help for their behavioral problems and get out of adjustment confinement.

Captain Radtke is discriminating against plaintiffs by allowing them only two showers a week even though inmates in other cell blocks get three showers a week. Sergeant Tamminga has failed to help plaintiffs get more showers and mental health treatment.

Defendants Doyle, Raemisch and Grams failed to properly supervise their subordinates. They have also failed to improve plaintiffs' conditions of confinement.

OPINION

**I. Class Certification**

As an initial matter, I note that plaintiffs continue to style this case as a "class action complaint" and have asked the court to certify it as such. Although it still is not entirely clear

4

what kind of class petitioners seek to have certified, it appears they would like to proceed on behalf of all CCI prisoners with mental health needs. It is not necessary for the court to know the exact contours of the purported class because, in order to certify a class action, the court must find, among other things, that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). I cannot make this finding in the present action because plaintiffs are not represented by an attorney. Since absent class members are bound by a judgment whether for or against the class, they are entitled at least to the assurance of competent representation afforded by licensed counsel. *Oxendine v. Williams*, 509 F.2d 1405, 1407 (4th Cir. 1975); *see also Ethnic Awareness Organization v. Gagnon*, 568 F. Supp. 1186, 1187 (E.D. Wis. 1983); *Huddleston v. Duckworth*, 97 F.R.D. 512, 51415 (N.D. Ind. 1983)(prisoner proceeding *pro se* not allowed to act as class representative). Consequently, class certification will be denied.

**II. Rule 8**

To satisfy the notice-pleading standard of Rule 8 of the Federal Rules of Civil Procedure, a complaint must provide a "short and plain statement of the claim showing that the pleader is entitled to relief," which is sufficient to provide the defendant with "fair notice" of the claim and its basis. *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) and quoting Fed.R.Civ.P. 8(a)(2)). Under Rule 8, a complaint must allege facts that allow a court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, --- U.S. ----, 129 S.Ct. 1937, 1949 (2009); *see also Cooney v. Rossiter*, 583 F.3d 967, 971 (7th Cir. 2009) (before subjecting

5

defendants to "paranoid pro se litigation . . . alleging . . . a vast, encompassing conspiracy," the plaintiff must meet a "high standard of plausibility"). The complaint must put the defendant on notice of the claims and the grounds they rest upon, along with "some indication . . . of time and place." *Thomson v. Washington*, 362 F.3d 969, 970-71 (7th Cir. 2004). A complaint consisting of nothing more than "'naked assertion[s]' devoid of 'further factual enhancement,'" must be dismissed for failing to meet the requirements of Rule 8. *Iqbal*, 129 S.Ct. at 1949 (quoting *Twombly*, 550 U.S. at 557). The court must, however, construe pro se complaints liberally and hold them to a less stringent standard than formal pleadings drafted by lawyers. *Erickson*, 551 U.S. at 94 (citation omitted); *Obriecht v. Raemisch*, 517 F.3d 489, 491 n. 2 (7th Cir. 2008).

Plaintiffs' allegations can best be summed up as a claim that defendants have failed to provide them with proper mental health treatment. It is well settled that the Eighth Amendment protects the mental health of prisoners no less than their physical health. *See, e.g., Meriwether v. Faulkner*, 821 F.2d 408, 413 (7th Cir. 1987); *Wellman v. Faulkner*, 715 F.2d 269, 272 (7th Cir. 1983). However, an inmate must still allege that his mental health problems constitute a serious medical need and that prison officials have met that need with deliberate indifference. *Sanville v. McCaughtry*, 266 F.3d 724. "Serious medical needs" include (1) conditions that are life-threatening or that carry risk of permanent serious impairment if left untreated, (2) those in which the deliberately indifferent withholding of medical care results in needless pain and suffering, or (3) conditions that have been "diagnosed by a physician as mandating treatment." *Gutierrez v. Peters*, 111 F.3d 1364, 1371-73 (7th Cir. 1997). A prison official has acted with deliberate indifference when the official "knew of a substantial risk of harm to the inmate and

acted or failed to act in disregard of that risk." *Norfleet v. Webster*, 439 F.3d 392, 396 (7th Cir. 2006) (citing *Walker v. Benjamin*, 293 F.3d 1030, 1037 (7th Cir. 2002)).

Thus, under this standard, plaintiffs' claim has three elements:

(1) Did plaintiffs need medical treatment?

(2) Did defendants know that plaintiffs needed treatment?

(3) Despite defendants' awareness of the need, did defendants fail to take reasonable measures to provide the necessary treatment?

### A.  Crowley's Allegations

I begin with plaintiff Crowley.  Crowley has alleged that CCI defendants Schwebke and Nickel have been deliberately indifferent to his serious medical needs by allowing him to remain in segregation even though he has a history of mental disorders.  These allegations are insufficient to meet the notice requirement of Rule 8.  First, he provides no dates as to when the events in question occurred.  Second, Crowley does not allege that he was in need of any particular medical treatment, that he suffered any harm or faced a risk of substantial harm by the lack of treatment or that defendants were even aware that he needed treatment.  Although Crowley asserts that he has a "history" of psychological distress, anxiety attacks and personality disorders, he does not say what symptoms he was having, that he reported those symptoms to anyone, what mental health treatment he believes was necessary or why transferring him to a different institution would have mattered.  The mere fact that he has a "history" of anxiety and a personality disorder is not enough to support an inference that he required treatment and that defendants knew it.

Crowley's remaining claims, which appear to also be asserted by Green, are insufficient to state a plausible claim for relief. All Crowley says about defendants Radtke and Tamminga is that they "refused" to talk to Nickel about moving him to a different institution where he can get help for his behavioral problems. Again, no dates are provided. The mere allegation of "behavioral problems" is not enough to establish that Crowley had a serious medical need. Further, he does not allege that Radtke and Tamminga were aware of this need or had any responsibility for treating it. Similarly, plaintiffs have not stated any plausible claim against defendants Doyle, Raemisch and Grams because they allege no facts from which it can be inferred that any of these defendants were personally involved in and responsible for the alleged constitutional violations. *See Iqbal*, 129 S.Ct. at 1948; *see also Vance v. Rumsfeld*, 653 F.3d 591, 599 (7th Cir. 2011). Even when construed liberally, plaintiffs' allegations that defendants Radtke, Tamminga, Doyle, Raemisch and Grams were deliberately indifferent to their serious medical needs is too vague to provide defendants with notice of what they are claiming and to suggest anything more than a sheer possibility that defendants acted unlawfully.

Finally, Crowley and Green assert that Captain Radtke is discriminating against them by allowing them only two showers a week even though inmates in other cell blocks get three showers a week. The equal protection clause of the Fourteenth Amendment guarantees that "all persons similarly situated should be treated alike." *City of Cleburne, Tex. v. Cleburne Living Center*, 473 U.S. 432, 439 (1985). Plaintiffs provide no facts in their complaint, however, to show that they are similarly situated to prisoners on other cell blocks. Indeed, plaintiffs admit that they are different from other prisoners insofar as they are in segregation. When the factual allegations

of the complaint are entirely consistent with lawful conduct, as they are here, then the plaintiffs have not satisfied the plausibility standard announced in *Twombly* and *Iqbal*.

### B. Green's Allegations

Green alleges facts concerning defendants at two different institutions: CCI and WSPF.

#### 1. Claims Against CCI Defendants

To the extent that Green's allegations are the same as Crowley's, they fail to comply with Rule 8 for the same reasons. Green, however, has alleged a few additional facts regarding defendants Schwebke and Dr. Barid. Specifically, Green alleges that Dr. Barid

- referred him to the Wisconsin Resource Center only for an "evaluation" instead of for programming; and

- did not provide any description of Green's symptoms on the referral form but instead noted only that Green liked to file lawsuits, which led to Green receiving improper treatment at WRC.

With respect to Schwebke, Green alleges that he "allowed" Barid to do the foregoing acts. In addition, Green alleges, Schwebke advised him to transfer to WSPF, where Green did not receive adequate care.

Although these allegations are a bit more specific than Crowley's, they still are insufficient to provide defendants with fair notice of the claims Green is asserting. Like Crowley, Green does not provide dates on which the allegedly unlawful conduct occurred, nor does he provide any description of the symptoms he was having or that defendants Barid or Schwebke knew of those symptoms. Further, Green does not allege what sort of "programming" he needed at WRC or allege any facts to suggest that it was not reasonable for Barid to refer him there for an

evaluation. A disagreement about medical treatment does not rise to the level of an Eighth Amendment violation. *Estelle v. Ganble,* 429 U.S. 97, 107 (1976) (decision whether to order particular treatment for back injury, such as an x-ray, is classic example of medical judgment and does not represent cruel and unusual punishment). Further, if by "programming" Green means educational programs, a prisoner has no constitutional right to such programs. *See Higgason v. Farley*, 83 F.3d 807, 809 (7th Cir. 1996) (holding that loss of "social and rehabilitative activities" are not "atypical and significant hardships" that are constitutionally actionable rights under *Sandin v. Conner*, 515 U.S. 472 (1995)).

As for Schwebke, Green alleges only that he was Barid's supervisor; this is not enough to establish that Schwebke was personally responsible for any deliberate indifference to Green's serious mental health needs. Similarly, the fact that Schwebke might have convinced Green to transfer to WSPF is not enough to make him personally responsible for any constitutional violations that might have been inflicted upon Green by WSPF staff. Like Crowley, Green has not alleged sufficient facts to suggest that he can establish a plausible claim to relief against any of the CCI defendants.

In sum, neither plaintiff has provided enough detail regarding how, when and by whom their constitutional rights were violated by defendants at CCI sufficient to satisfy Rule 8. Accordingly, the complaint will be dismissed without prejudice as to these claims. If either Green or Crowley wishes to proceed on the claims pertaining to their treatment at CCI, then one or both of them must file a second amended complaint that cures these defects. More specific instructions concerning the filing of a second amended complaint will be discussed below.

2. **Claims Against WSPF Defendants**

In addition to his claims against the CCI defendants, Green alleges that certain defendants failed to respond appropriately to his mental and physical health needs while he was a prisoner at WSPF. I decline to screen these claims at this juncture because, as discussed below, it is unclear whether they will remain in this lawsuit.

III. Rule 20 Problems

As the Court of Appeals for the Seventh Circuit has emphasized, district courts have an independent duty to apply the permissive joinder rule stated in Fed. R. Civ. P. 20 to prevent improperly joined parties from proceeding in a single case. *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007) (complaint raising unrelated issues against different defendants "should be rejected" by district court in accordance with Rule 20); *see also Boriboune v. Berge*, 391 F.3d 852, 856 (7th Cir. 2004) ("district courts must accept complaints filed by multiple prisoners if the criteria of permissive joinder are satisfied"); Fed. R. Civ. P. 21 (at any time, on its own motion, court may add or drop a party or sever claim against party). Rule 20 prohibits plaintiffs from joining together to file one action unless their claims arise out of "the same transaction, occurrence, or series of transactions or occurrences" and "any question of law or fact common to all plaintiffs will arise in the action."

In addition, Rule 20 prohibits a plaintiff from asserting unrelated claims against different defendants or sets of defendants in the same lawsuit. Multiple defendants may not be joined in a single action unless the plaintiff asserts at least one claim to relief against each of them that arises out of the same transaction or occurrence or series of transactions or occurrences and presents questions of law or fact common to all. *George*, 507 F.3d at 607; 3A Moore's Federal Practice § 20.06, at 2036–2045 (2d ed. 1978).

11

Only after the requirements for joinder of parties have been satisfied under Rule 20 may a plaintiff use Fed. R. Civ. P. 18 to join any unrelated claims against the multiple defendants or any combination of them. *Intercon Research Assn., Ltd. v. Dresser Ind., Inc.*, 696 F.2d 53, 57 (7th Cir. 1983) (quoting 7 Charles Alan Wright et al., Federal Practice & Procedure ). In other words, only once the core set of allowable defendants has been determined under Rule 20 may a plaintiff join additional unrelated claims against one or more of those defendants under Rule 18.

This case involves both provisions of Rule 20 because it involves multiple plaintiffs and multiple defendants. I address the multiple-defendant question first. Like the initial complaint, the amended complaint can be read as fairly alleging claims against two different core groups of defendants for different incidents:

> 1) Defendants Rubin-Asch, Sharpe and Hoem for failing to respond appropriately to plaintiff Green's mental and physical health needs while he was a prisoner at WSPF (referred to hereafter as the "WSPF claims"); and
>
> 2) The remaining defendants for violating Green and Crowley's Eighth Amendment rights by failing to provide them with adequate mental health treatment while they were housed at CCI (referred to hereafter as the "CCI claims").

These claims cannot be joined in this lawsuit because they do not arise out of the "same transaction, occurrence, or series of transactions or occurrences." The first set of claims involves staff at WSPF and has nothing to do with plaintiff Crowley. The mere fact that defendant Schwebke, who works at CCI, advised Green to transfer to WSPF is not enough to connect the two claims or show that they arose from the "same transaction."

**IV.  Next Steps**

12

Although Green may be able to pursue both his WSPF claims and his CCI claims simultaneously (if his claims survive screening), he must do so in separate lawsuits. Alternatively, he can choose to dismiss voluntarily either his WSPF or CCI claims and pursue them at another time. Here are Green's choices:

**Option #1**: Green can choose to pursue only his CCI claims and voluntarily dismiss the WSPF claims. If he makes that choice, then he will remain in this case with Crowley. Crowley and Green will be jointly responsible for filing a second amended complaint relating only to the CCI defendants that cures the Rule 8 problems identified above. Green would not owe additional filing fees or face strikes for the WSPF claims. A lawsuit dismissed voluntarily at this stage would be dismissed without prejudice, so Green could bring the WSPF claims at another time.

**Option #2**: Green can choose to pursue only his WSPF claims and voluntarily dismiss the CCI claims. If he makes that choice, then the court will sever his case from Crowley's and open a new case with a new case number. The filing fee that Green paid in this case will be applied to the new case and the first amended complaint filed in this case will become the operative pleading in the new case. At that time, the court will screen only the allegations pertaining to the WSPF claims as required under 28 U.S.C. § 1915A(a) and (b). Under that scenario, Crowley would be left to pursue his claims against the CCI defendants in this case on his own and will be responsible for filing a second amended complaint that cures the Rule 8 problems identified above. Green would not owe additional filing fees or face strikes for the CCI claims and those claims would be dismissed without prejudice.

**Option #3**: Green can pursue both the existing CCI claims and the WSPF claims. If he chooses that option, then he will have to submit an initial partial filing fee for the new case. As with Option #2, the first amended complaint will become the operative pleading in the new case, to be screened only as to the allegations regarding the WSPF claims. As with Option #1, Green will remain in this case with Crowley and will be jointly responsible for filing a second amended complaint relating only to the CCI defendants that cures the Rule 8 problems identified above.

**If Green chooses Option #1 or Option #3**, then he must advise the court of that fact AND submit a second amended complaint, signed by both himself and Crowley, relating to the CCI claims **not later than November 14, 2011**. In addition, if he chooses Option #3, then he must also submit an initial partial payment of $1.09 in order to pursue his separate lawsuit against the WSPF defendants.

**If Green chooses Option #2**, then he should advise the court of that fact **not later than November 7, 2011**. The court will then set a deadline for Crowley to submit a second amended complaint in this case.

In making this decision, Green should keep in mind that he and Crowley still have not established that they are entitled either to proceed jointly or *in forma pauperis* with respect to their claims against the CCI defendants. Green and Crowley will be allowed to proceed jointly in this case as plaintiffs only if they: 1) state a plausible claim for relief that 2) arises out of "the same transaction, occurrence, or series of transactions or occurrences" and 3) raises a common question of law or fact. That standard has not yet been met: from their pleadings so far, it appears that

plaintiffs are complaining about different actions by different CCI defendants at different points in time. In other words, nothing in this order should be construed as permission for Green and Crowley to proceed jointly so long as Green pursues his WSPF claims separately. Green and Crowley will be allowed to proceed jointly only if they file an amended complaint that satisfies both Rule 8 and the Rule 20 standard I have just articulated.

In addition, as Green may be aware, he may be subjected to a separate strike for any separate lawsuit that he pursues if any claim in the lawsuit is dismissed for failure to state a claim upon which relief may be granted or because it is legally meritless. Once a prisoner receives three strikes, he cannot proceed in new lawsuits without first paying the full filing fee except in very narrow circumstances. *See* 28 U.S.C. § 1915(g).

Finally, both Green and Crowley are advised that if one or both of them submit a second amended complaint that fails to cure the Rule 8 defects identified in this order, the complaint will be dismissed with prejudice and the plaintiff or plaintiffs who filed the second amended complaint will receive a strike.

ORDER

IT IS ORDERED that:

(1) The first amended complaint filed by plaintiffs Damien Green and Timothy Crowley is DISMISSED WITHOUT PREJUDICE as to the claims against the CCI defendants. Screening of the claims against the WSPF defendants is stayed at this time.

(2) Plaintiffs' request for class certification is DENIED.

(3) Plaintiff Green must choose one of the 3 options identified in this order and both plaintiffs must comply with the instructions set forth on pages 13-15 of this order.

Entered this 28th day of October, 2011.

BY THE COURT:

/s/

STEPHEN L. CROCKER
Magistrate Judge