IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

DAMIEN GREEN,

                           Plaintiff,                              OPINION AND ORDER

    v.

                                                                10-cv-745-slc

GREGORY GRAMS, KURT SCHWEBKE,
JIM DOYLE, JERRY MAIER, RICK RAEMISCH,
SGT. TAMMINGA, DR. BARID and
JANEL NICKEL,

                           Defendants.

---

       This is a prisoner civil rights action brought pursuant to 42 U.S.C. § 1983. Before the court is plaintiff Damien Green's second amended complaint, which he filed in response to this court's order entered October 28, 2011. *See* Op. and Order, Oct. 28, 2011, dkt. 47. Green has solved the Rule 8 problems identified in that order by filing a separate suit against the WSPF defendants; further, Green's former co-plaintiff, Timothy Crowley, reports that he no longer wishes to be part of this lawsuit. Accordingly, the only question before the court is whether Green has adequately cured the pleading defects identified in the October 28, 2011 order with respect to the defendants named in this lawsuit.

       The relevant legal standards and a summary of the first amended complaint are set forth in the October 28, 2011 order and incorporated herein by reference. Having carefully read the allegations of the second amended complaint, I find that Green has failed to allege facts sufficient from which it can be inferred that any of the defendants violated his constitutional rights.

I.  Defendants Barid and Schwebke

With respect to defendant Barid, Green alleges that while he was housed at CCI, he saw Barid for a mental health evaluation.  Barid completed a referral form so that Green could obtain a mental health evaluation at the Wisconsin Resource Center.  Barid was aware that Green was having symptoms of aggression, depression and behavioral deterioration and knew that he had been on adjustment segregation for three years, but she did not report this on the referral form.  Barid noted, however, that Green liked to file lawsuits.  Barid did this on purpose in order to prevent Green from obtaining proper treatment at WRC.  Defendant Kurt Schwebke, who is Barid's supervisor, saw the referral form but did not change it.

Green was sent to WRC for the evaluation.  However, when WRC staff saw Barid's notation on the form, they "discriminated" against Green by placing him in segregation for his refusal to eat and did not provide him with a mental health evaluation.

Green contends that Barid and Schwebke's actions violated his right to be free from cruel and unusual punishment as guaranteed by the Eighth Amendment.  As noted in the October 28, 2011 order, to prove his Eighth Amendment claim, Green must first establish that he has a serious medical need, which in turn requires him to show that at the time of Barid's evaluation, he was suffering from a condition that was: 1) life-threatening or carried a risk of permanent serious impairment if left untreated; 2) diagnosed by a physician as mandating treatment; or 3) one that would result in needless pain or suffering if left untreated.  *Gutierrez v. Peters*, 111 F.3d 1364, 1371-73 (7th Cir. 1997).  Green's second amended complaint does not permit a reasonable inference that he can meet any of these criteria.  Green describes his mental health condition only generally, stating that he has had "symptoms of aggression, depression and

2

behavioral deterioration" since he was young and that he has been having anxiety attacks and mood disorders. Green fails to describe any of his symptoms with particularity or show why the failure to treat them posed a danger to Green or caused him undue pain and suffering. Indeed, it is not clear from the complaint that Green was experiencing any specific mental health problems at the time Barid evaluated him nor is it clear even *when* Barid evaluated him. The fact that Green has a "history" of problems is not, by itself, a serious medical need.

Not only has Green failed to allege facts permitting an inference that he had a serious medical need, but his alleged chain of causation from Barid to his alleged inadequate care at WRC is inherently incredible. Essentially, Green alleges that Barid flouted her professional responsibilities by deliberately preparing an inaccurate referral form so that Green would not get a proper evaluation at WRC. It would seem that intake staff at WRC would have had its own procedure–and responsibility–to evaluate Green and note his symptoms, no matter what Barid might have put on the referral form, but I will not speculate at the screening stage. Green's allegation that staff at WRC simply threw him in segregation because Barid warned them that Green liked to file lawsuits is patently incredible, not just because it is palpably implausible, but because Green himself provides a different, legitimate explanation: he was put in segregation because he refused to eat.

In sum, Green has failed to allege facts that permit a reasonable inference that Barid was deliberately indifferent to Green's serious medical needs when she completed the referral form to WRC or that Green was harmed by Barid's alleged actions. It follows, then, that Green has failed to state a plausible claim against defendant Schwebke for his alleged refusal to change the referral form.

3

Finally, I note that Green repeats his allegation that Schwebke violated his Eighth Amendment rights by advising him to transfer to WSPF, where Green did not receive adequate care. As noted in the October 28, 2011 order, Schwebke's alleged advice is not enough to make Schwebke personally responsible for any constitutional violations that might have been inflicted upon Green by WSPF staff. Accordingly, this claim also must be dismissed.

## II.  Defendants Radtke, Tamminga and Nickel

Green alleges that defendants Radtke, Tamminga and Nickel violated his Eighth Amendment rights by refusing to grant his request to be moved to another institution where he could get help for his behavioral problems and could get out of adjustment confinement. As in the first amended complaint, Green has failed to allege facts that show that his "behavioral problems" constitute a serious medical need, much less that defendants were aware that he had such a need. Prison officials have no constitutional duty to transfer an inmate with behavioral problems to a different institution simply because he asks for it.

Green also alleges that these three defendants violated his rights under the Equal Protection Clause by allowing him and the other inmates housed on DS1 only 2 showers a week while inmates on DS2 (another segregation unit) got 3 showers a week. The Equal Protection Clause directs that all persons similarly situated should be treated alike. *Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). "Unequal treatment among inmates . . . is justified if it bears a rational relation to legitimate penal interests." *Williams v. Lane*, 851 F.2d 867, 881 (7th Cir. 1988) (citing *Hudson v. Palmer*, 468 U.S. 517, 522-23 (1983)). Generally, however, when "confronted with claims based on the Equal Protection Clause, the courts should allow the

prison administrators the full latitude of discretion, unless it can be firmly stated that the two groups are so similar that discretion has been abused." *Jones v. North Carolina Prisoners Union*, 433 U.S. 119, 136 (1977).

Here, Green alleges no facts from which it can be inferred that units DS1 and DS2 are so similar that the extra shower each week might violate the Equal Protection Clause.  In fact, in his prayer for relief, Green acknowledges that DS2 is a different segregation unit with more privileges than DS1.  Sec. Amended Complaint, dkt. 53, at 10, ¶E.  Green's admission that prisoners on DS2 enjoy more privileges than prisoners on DS1 effectively defeats his Equal Protection Claim:  awarding more privileges to prisoners who earn their way to a higher classification level is a rational means of encouraging inmates with behavioral problems to improve their behavior.  Green will be denied leave to proceed on this claim.

**III.  Defendants Grams, Raemisch and Doyle**

Finally, Green has sued Grams, Raemisch and former governor Doyle on the theory that as warden of CCI, corrections secretary and former governor, respectively, these individuals are responsible for the health and safety of all CCI inmates, including Green.  As noted in the previous order, however, a defendant can only be liable under § 1983 for those constitutional deprivations in which he was personally involved.  *Alejo v. Heller*, 328 F.3d 930, 936 (7th Cir. 2011).  Green does not allege that any of these defendants was personally responsible for his alleged deprivations; his theory of liability is that each defendant is a high-ranking official charged ultimately with oversight of CCI.  This theory of *respondeat superior* is not enough to impose liability under § 1983.  Even if Green could establish some sort of personal involvement

by these defendants, his claim still would fail because Green has not established a serious medical need.

ORDER

IT IS ORDERED that Damien Green's application for leave to proceed *in forma pauperis* is DENIED and the second amended complaint is DISMISSED WITH PREJUDICE. The clerk of court is directed to record a strike for plaintiff Damien Green.

Entered this 19th day of January, 2012.

BY THE COURT:

/s/

STEPHEN L. CROCKER
Magistrate Judge